Hon. David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMERICAN FIRE AND CASUALTY COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>SKOUNTRIANOS DDS MS D/B/A ORTHODONTIC EXCELLENCE,<br><br>    Defendant. | Case No. 3-21-cv-05601-DGE<br><br>**SKOUNTRIANOS DDS MS D/B/A ORTHODONTIC EXCELLENCE'S AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS** |
| SKOUNTRIANOS DDS MS D/B/A ORTHODONTIC EXCELLENCE,<br><br>    Counterclaim Plaintiff,<br><br>  v.<br><br>AMERICAN FIRE AND CASUALTY COMPANY,<br><br>    Counterclaim Defendant. | |

Defendant Skountrianos DDS MS d/b/a Orthodontic Excellence ("OE") answers Plaintiff American Fire and Casualty Company's ("American Fire") Complaint as follows:

**I.  PARTIES, JURISDICTION AND VENUE**

1.  Answering Paragraph 1, OE admits the same.

2.  Answering Paragraph 2, OE admits the same.

3.  Answering Paragraph 3, OE admits the same.

AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS - 1
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

## II.      FACTS

4.     Answering Paragraph 4, OE admits that American Fire issued it a "Businessowners Policy," with policy number BZA (19) 57 74 95 94 with a policy period of May 1, 2018 to May 1, 2019 (the "Policy"). The Policy included, among other things, commercial property, business income, extended business income, and extra expense coverages.

5.     Answering Paragraph 5, OE admits that a fire broke out at the insured location on September 9, 2018. OE avers that the insured location housed OE's specialty orthodontics practice, not a dental practice. To the extent not expressly admitted, OE denies every allegation therein.

6.     Answering Paragraph 6, OE admits that in an effort to mitigate its business income losses, OE entered into a purchase and sale agreement with a retiring orthodontist, Dr. Patel, by which OE would assume care of Dr. Patel's patients and direct the amounts collected to Dr. Patel in exchange for, among other things, the right to treat OE's own patients in Dr. Patel's location, and title to Dr. Patel's equipment. To the extent not expressly admitted, OE denies every allegation therein.

7.     Answering Paragraph 7, OE admits that the Policy provided coverage for, among other things, business personal property and 12 months of business interruption coverage, and that the Policy speaks for itself. To the extent not expressly admitted, OE denies every allegation therein.

8.     Answering Paragraph 8, OE admits that American Fire issued payments toward OE's claims. To the extent not expressly admitted, OE denies every allegation therein.

9.     Answering Paragraph 9, OE is not presently aware of any dispute between itself and American Fire regarding American Fire's coverage obligations for property damage or personal property. However, OE expressly reserves the right to assert any claim it may have or become aware of in the future regarding the same. To the extent not expressly admitted, OE denies every allegation therein.

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 2
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

10. Answering Paragraph 10, OE admits the same.

11. Answering Paragraph 11, OE admits the same.

12. Answering Paragraph 12, OE denies that the "Appraisal provision" alleged therein is an accurate reproduction of the Policy language. OE avers that Exhibit A to American Fire's Complaint is not a complete reproduction of the Policy. To the extent not expressly admitted, OE denies every allegation therein.

13. Answering Paragraph 13, OE admits that the Policy speaks for itself. To the extent not expressly admitted, OE denies every allegation therein.

14. Answering Paragraph 14, OE admits the same.

15. Answering Paragraph 15, OE admits the same.

16. Answering Paragraph 16, OE admits the same.

17. Answering Paragraph 17, OE admits the same.

18. Answering Paragraph 18, regarding what American Fire's appraiser "requires," OE lacks sufficient information to admit or deny the allegations and therefore denies the same. Regarding American Fire's characterizations of what OE's appraiser "prefers" in an umpire, OE denies the same. To the extent not expressly admitted, OE denies every allegation therein.

19. Answering Paragraph 19, OE admits the same.

20. Answering Paragraph 20, OE denies every allegation therein. OE avers that its appraiser suggested several umpires, including certified public accountants and retired judges turned mediators. To the extent not expressly admitted, OE denies every allegation therein.

### III. CAUSE OF ACTION

21. Answering Paragraph 21, to the extent an answer is required; OE incorporates by reference all preceding paragraphs. To the extent not expressly admitted, OE denies every allegation therein.

22. Answering Paragraph 22, OE denies that American Fire is entitled to an order appointing an umpire when American Fire has prejudicially delayed and frustrated the appraisal

AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS - 3
Case No. 3-21-cv-05601-RSL

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

process by unreasonably changing its unilateral "requirements" for an appraisal umpire over the course of many months. OE further denies that the only suitable umpire is a "qualified CPA with direct experience in measuring economic damages or business interruption claims for commercial property losses." To the extent not expressly admitted, OE denies every allegation therein.

### IV.   PRAYER FOR RELIEF

1. Answering Paragraph 1, OE denies that American Fire is entitled to the relief it seeks. To the extent not expressly admitted, OE denies every allegation therein.

2. Answering Paragraph 2, OE denies that American Fire is entitled to costs and attorney fees. To the extent not expressly admitted, OE denies every allegation therein.

3. Answering Paragraph 3, OE denies that American Fire is entitled to any further relief. To the extent not expressly admitted, OE denies every allegation therein.

### V.   AFFIRMATIVE DEFENSES

By way of further answer, OE asserts the following affirmative defenses:

1. American Fire fails to state a claim on which relief can be granted.

2. American Fire's claim is barred in whole or in part by waiver, laches, and estoppel.

3. OE preserves any and all other defenses that may be available to it or that may be discovered throughout the course of discovery in this matter.

### ORTHODONTIC EXCELLENCE'S COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Skountrianos DDS, MS dba Orthodontic Excellence alleges the following counterclaims against Plaintiff/Counterclaim Defendant American Fire and Casualty Insurance Company:

AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS - 4
Case No. 3-21-cv-05601-RSL

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

## I. PARTIES

1. Defendant/Counterclaim Plaintiff Skountrianos DDS, MS dba Orthodontic Excellence ("OE") is a Washington professional limited liability corporation whose members are Washington citizens.

2. Plaintiff/Counterclaim Defendant American Fire and Casualty Company ("American Fire") is a company organized under the laws of the State of New Hampshire with its principal place of business in Massachusetts. American Fire is owned by Liberty Mutual Group.

## II. JURISDICTION, AND VENUE

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the dispute is between citizens of different states and the amount in controversy, exclusive of fees and costs, exceeds $75,000.

2. Venue is proper in this District because the acts and omissions giving rise to the claim occurred in Pierce County, which is situated within the U.S. District Court for the Western District of Washington.

## III. STATEMENT OF FACTS

<u>Orthodontic Excellence's Practice and Growth</u>

1. OE is an orthodontics practice owned and operated by Dr. Helena Skountrianos and Dr. Bobby Virk. OE treats patients for, among other things, dysfunction and/or trauma to the teeth and jaw using interventions such as surgery, Invisalign, retainers, and braces. OE requires specialized equipment and orthodontic tools to treat its patients.

2. In 2016, Dr. Virk sold his Bellevue practice and joined OE. Dr. Virk entered into a non-compete and non-solicitation agreement with the purchaser, which precluded him from treating former patients at his new location.

3. In an effort to grow OE's business, Dr. Virk redesigned OE's marketing strategy and significantly increased its marketing budget year over year. Among other things, Dr. Virk focused OE's marketing efforts toward two areas of opportunity: (1) promoting OE's Invisalign

AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS - 5
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

expertise, and (2) making efforts to increase the number of referrals that OE received from local primary care dentists, which, as a group, were OE's largest referral source.

4. OE's increased and revised marketing efforts were highly successful. For example, in the first eight months of 2018 OE's patients had increased by 57% year over year. OE's growth was continuing on this robust trajectory at the time OE's Puyallup location burned to the ground.

<u>The Policy</u>

5. To protect its business, OE purchased a commercial property policy from American Fire, which included, among other things, commercial property coverage, business income loss and extra expense coverage, with the policy number BZA (19) 57 74 95 94 and an effective date of May 1, 2018 to May 1, 2019 (the "Policy").

6. The Policy contains certain endorsements modifying or expanding coverage, including the Washington Businessowners Property Endorsement and the Washington Changes Endorsement. The Policy's "Endorsement Period" is from June 12, 2018 to May 1, 2019.

7. The Policy includes "Business Income" coverage, which provides, "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration,'" which is caused by "direct physical loss of or damage to property" at the insured premises.

8. If an insured suffers "the necessary suspension of [its] 'operations' [that] produces a Business Income loss payable under this policy," OE is also entitled to "Extended Business Income" coverage. This coverage "begins on the date property . . . is actually repaired, rebuilt, or replaced, and 'operations are resumed.'" Extended Business Income coverage ends on "[t]he date [the insured] could restore [its] 'operations' with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred," or 60 consecutive days after the property is rebuilt and operations are resumed, whichever is earlier.

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 6
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

9. The Policy provides coverage for "Extra Expense," which means "necessary expenses [incurred] during the 'period of restoration'" that the insured "would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." This coverage is provided for costs incurred to, among other things, "avoid or minimize the suspension of business and to continue 'operations' . . . [a]t the replacement premises or at temporary locations, including . . . costs to equip and operate the replacement or temporary locations."

<u>The Fire, OE's Claims for Coverage, and American Fire's<br>Unreasonable Denial of Coverage and Benefits</u>

10. On or about September 9, 2018, a fire destroyed the building in which OE's practice was located. OE had purchased and specifically designed the building for its specialty orthodontics practice (the "Loss Location"). The Loss Location had six patient treatment chairs and a large lobby to welcome patients and comfort children and teenagers, who often arrived anxious about receiving treatment.

11. In the aftermath of the fire OE made claim to American Fire for the Policy benefits it had specifically purchased to guard against such catastrophes. On information and belief American Fire is a wholly owned subsidiary of Liberty Mutual.

12. As part of its claim, OE requested the benefits owed to it pursuant to the Policy's business income loss and extra expense coverages. In return, American Fire/Liberty Mutual assigned an auditor-CPA named Brian Bukoskey to adjust OE's business income loss and extra expense claim. On information and belief, Mr. Bukoskey is either a Liberty Mutual employee or the owner/employee of a nominally "outside" company so financially beholden to Liberty Mutual that he is under constant and significant economic pressure to reduce policyholders' claims.

13. American Fire denied all but $27,285.00 of OE's business income and extra expense claim because, according to Mr. Bukoskey, the growth in OE's practice was attributable

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 7
Case No. 3-21-cv-05601-RSL

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

to Dr. Virk's former practice and patients "merging" with OE's Puyallup business. Mr. Bukoskey claimed that after this merger period OE's growth would have quickly tapered off. The bases cited by Mr. Bukoskey for American Fire's denial—which constituted virtually all of OE's business income loss and extra expense claim—were, as set forth below, absurd.

14. First, Dr. Virk was subject to a non-compete/non-solicitation agreement prohibiting him from "merging" his former Bellevue practice (and its clients) with OE's practice. Second, even if this was not the case, it strains the imagination to believe that the growth of OE's practice was due to Dr. Virk's former patients travelling 30 plus miles along one of the most congested stretches of Interstate 5 to see him in Puyallup. Third, at the time of the loss, Dr. Virk had been practicing at OE's Puyallup location for approximately 2 years; any merger period, to the extent one existed in the first place, was over.

15. OE retained Adjusters International ("AI") to prepare a credible accounting of its business income loss and extra expense. After AI's review of OE's financial documentation and familiarization with its business and growth strategy, AI concluded that OE's business income and extra expense loss totaled $1,247,628.00 in the 12 months following the complete destruction of OE's practice. This was despite AI applying a conservative a 25% growth rate to projected business income.

### American Fire's Failure to Participate in Appraisal in Good Faith

16. The disparity between the parties' positions lead to OE eventually invoking the Policy's appraisal provision. OE selected CPA Luke Fischer as its appraiser and American Fire selected Michael Vannucci. On information and belief, Mr. Vannucci derives significant income from working for insurance companies (including Liberty Mutual) to reduce policyholders' claims.

17. Upon his retention, Mr. Vannucci requested a multitude of documents from Mr. Fischer allegedly relevant to quantifying OE's business income loss. However, before the responsive documents had even been produced, Mr. Vannucci stated that he was ready to discuss

AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS - 8
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

the outer limits of American Fire's liability with Mr. Fischer. In subsequent communications, Mr. Vannucci repeated an unreasonably low number as representing the total amount of OE's business income and extra expense loss. This was due to Mr. Vannucci immediately picking up Mr. Bukoskey's false and improbable narrative: that OE's growth was caused by Dr. Virk's former Seattle-area practice and patients merging with OE's Puyallup practice.

18. Mr. Fischer was unable to disabuse Mr. Vannucci of his preconceived notions or otherwise convince American Fire to reverse its unreasonable denial of the vast majority of OE's claim. As a result, Mr. Fischer and Mr. Vannucci both proposed candidates for an umpire who would decide the amount of OE' business income and extra expense losses in an appraisal proceeding.

19. Mr. Vannucci proposed three umpire candidates—none of whom are CPAs. All of the proposed umpires had worked directly for insurance carriers, including Liberty Mutual.

20. Mr. Fischer questioned whether an umpire who had worked almost exclusively for and derived significant income from insurers, including Liberty Mutual, could be expected to fairly and impartially value OE's business income and extra expense loss. Mr. Fischer then proposed three neutral umpires: one CPA, and two retired King County judges who now practice as mediators/arbitrators: Judge Paris Kallas and Judge Steve Scott.

21. American Fire rejected Mr. Fischer's proposed umpires and retained counsel, Sarah Eversole. Ms. Eversole proposed four more obviously biased umpires to Mr. Fischer, including (1) one retired attorney who represented insurance companies during his career; (2) one adjuster who worked for a firm specializing in carrier-side adjustments; (3) one CPA who recently presented to the Washington Defense Trial Lawyers on "The Impact of COVID on Claims"; and (4) another CPA whose firm almost exclusively performs work for carriers. Ms. Eversole threatened that absent quick agreement, American Fire would petition a court to compel an umpire appointment.

AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS - 9
Case No. 3-21-cv-05601-RSL

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

22. Mr. Fischer asked Ms. Eversole whether these proposed candidates derived their revenue from adjusting claims for insurance carriers and specifically, for Liberty Mutual. Ms. Eversole responded that each candidate had performed work for Liberty Mutual "almost certainly." However, she declared the umpire's work history and client base "irrelevant."

23. Mr. Fischer suggested two additional neutral umpires, both retired King County judges who now have mediation/arbitration practices: Judge John Erlick and Judge Bruce Heller. These proposed umpires were also rejected by American Fire.

24. American Fire's complaint alleges that it would only agree to an umpire that met certain "criteria." Such criteria, according to American Fire itself, includes an umpire with "sufficient experience and expertise in handling the type of matter at issue with *significant legal and dispute resolution experience to fully carry out an umpire's duties*." Compl. at Prayer for Relief, pg. 5 (emphasis added). This is precisely the type of experience a CPA does not have but that, for example, any of the former King County judges proposed by Mr. Fischer does.

25. American Fire's "requirements" that a CPA who worked extensively for insurers serves as umpire is found nowhere in the Policy and is facially unreasonable. American Fire's insistence on one of its chosen CPAs is also impractical: a retired judge has much better experience than a CPA presiding over contested matters, maintaining neutrality, and making evidentiary determinations. Further, the notion that none of the four judges put forward by Mr. Fischer, all with long and distinguished judicial careers, will be unable to follow basic accounting principles in order to render a fair decision is (1) insulting and untrue, and (2) undermined by American Fire's previous recommendation of a carrier-side attorney as an umpire. Indeed, five of the seven potential umpires put forward by American Fire are not CPAs—they are adjusters or attorneys.

26. Because American Fire's Complaint and communications demonstrate a protracted, unreasonable, and deliberate refusal to allow a fair appraisal, it is OE's position that American Fire has waived the Policy right to appraisal. OE believes that a jury should be

AMENDED AND SUPPLEMENTAL ANSWER AND COUNTERCLAIMS - 10
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

allowed to hear the evidence, determine OE's business income and extra expense coverage, and consider the reasonableness of American Fire's claims handling and failure to pay OE the policy benefits it has denied to date.

<u>American Fire Abuses the Appraisal Process in an Effort to Force Unreasonable Coverage positions on OE</u>

27. Eventually the Court order the parties to proceed to an appraisal. In so doing, the Court rejected each and every possible Umpire whom American Fire proposed. Instead, the Court appointed a retired judge, as OE had requested, the Honorable Curtis von Kann.

28. The commencement of the appraisal process did not bring American Fire's misconduct to heel. Rather, American Fire doubled down on its efforts unreasonably deny coverage and deny OE the benefits it was owed under the Policy.

29. First, American Fire persisted in pushing the same factual positions, including its theory that Dr. Virk "merged" his practice with OE's, that the facts flatly contradicted.

30. Second, American Fire sought to unreasonably minimize the coverage and benefits the Policy provides by adopting unreasonable policy interpretations. Among other things, American Fire has taken the position that the Policy's limits for business personal property and extra expense loss may not be stacked. It has also claimed that the Policy's extra expense coverage is not triggered by expenses that OE incurred to replace destroyed supplies in order to minimize the suspension of OE's operations precisely because the supplies were needed to operate OE's business. American Fire sought to conceal this unreasonable policy interpretations by instructing Mr. Vannucci to falsely present these as accounting principles for the Umpire to adopt and apply.

31. As a consequence, American Fire and its appraiser collaborated to minimize the scope and even the existence of OE's losses. OE's appraiser concluded that OE's combined business income and extra expense loss exceeded a half million dollars. In contrast, American Fire and its appraiser took the position that OE's net loss of income from the complete

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 11
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

destruction of its business was "likely zero" and that the covered "extra expense" it incurred to set up a business at a temporary location amounted to under $3,000. There simply was no reasonable, good faith basis for these figures.

<u>OE Gives American Fire Written Notice of Its Liability under
Washington's Insurance Fair Conduct Act ("IFCA")</u>

32. Meanwhile, pursuant to RCW 48.30.015(8), OE gave written notice to American Fire and to the Insurance Commissioner of the State of Washington of OE"s intent to assert a claim against American Fire under Washington's Insurance Fair Conduct Act ("IFCA"), and of the basis for asserting this claim. OE did so on or about November 2, 2021.

33. On or about November 24, 2021, American Fire responding to this notice by denying that it had violated IFCA or any other Washington statute or regulations.

### IV.    CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

34. OE realleges and incorporates by reference each and every preceding paragraph.

35. OE paid valuable premiums in consideration for the Policy.

36. American Fire breached its express and implied obligations and duties under the Policy by, among other things, unreasonably investigating and failing to provide an explanation for unreasonably denying OE's business income claim, and failing to participate in the appraisal process in good faith.

37. By breaching the terms of the Policy, American Fire has caused and continue to cause OE damages in an amount to be proven at trial, but not less than $1,247,628.00.

**SECOND CLAIM FOR RELIEF**
**(Common Law Bad Faith)**

38. OE realleges and incorporates by reference each and every preceding paragraph.

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 12
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

39. American Fire owe a duty of good faith and fair dealing to OE.

40. American Fire committed bad faith through multiple acts and omissions, including but not limited to: failing to conduct a reasonable investigation of the Claim; unreasonably failing to connect the controlling law and language of the Policy to the facts of the loss; failing to put OE's interests on a par with its own; failing to participate in the appraisal process in good faith; and unreasonably denying OE the business income loss coverage American Fire owes under the Policy.  American Fire's unreasonable acts and omissions constitute bad faith under Washington law.

41. American Fire's bad faith acts and omissions directly and proximately caused (and continue to cause) OE to suffer damages in an amount to be proven at trial. These include, but are not limited to, the deprivation of benefits owed to OE under the Policy and the costs associated with bringing this counterclaim for coverage, including court costs and attorney fees.

**THIRD CLAIM FOR RELIEF**
**(Per Se and Non Per Se Consumer Protection Act Claims)**

42. OE realleges and incorporates by reference each and every preceding paragraph.

43. American Fire's acts and omissions as described above violated multiple provisions of the Washington Administrative Code Section 284-30-330 including, but not limited to, subsections (4), (7); (13) and (18); such violations are per se violations of RCW 19.86, Washington's Consumer Protection Act (the "CPA").

44. American Fire's acts and omissions, as pled above, also constitute non per se violations of the CPA.  Such unreasonable acts and omissions were unfair or deceptive, occurred in trade or commerce, and affected Washington's policyholders and the public interest.

45. American Fire's unfair or deceptive acts or omissions directly and proximately

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 13
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

caused and continue to cause OE to suffer damages in an amount to be proven at trial. These damages include, but are not limited to, the deprivation of benefits owed to OE under the Policy and the costs associated with bringing this action for coverage, including court costs and attorney fees.

46. OE is entitled to recover its actual damages, attorney fees, litigation costs and treble damages up to $25,000, pursuant to RCW 19.86.090.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Relief)**

47. OE realleges and incorporates by reference each and every preceding paragraph.

48. A clear and present dispute exists between American Fire and OE as to the measure of OE's business income loss, what experience an umpire should have, and whether as related to their respective rights and obligations as to coverage under the policies. Accordingly, OE seeks declaratory judgment that:

    a.    American Fire's investigation under the Policy was unreasonable;

    b.    American Fire unreasonably denied OE's business income claim for coverage;

    c.    American Fire failed to make a good faith effort to settle before exercising the Policy's appraisal provision;

    d.    American Fire had an obligation to act reasonably in the selection of an umpire and that such obligation included (1) attempting to employ an umpire reasonably certain to be impartial and/or (2) agreeing to an umpire, such as those suggested by Mr. Fischer, reasonably certain to be impartial;

    e.    That American Fire's frustration of the appraisal process to date through its patently unreasonable and unfair claims handling including, but not limited to, its

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 14
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

demand that an obviously partial and financially beholden umpire be used to determine OE's business income and extra expense loss, has resulted American Fire's waiver of its right to appraisal; and

    f.    Any other declaratory relief as the Court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
### (Violation of the Insurance Fair Conduct Act (IFCA)

49.    OE realleges and incorporates by reference each and every preceding paragraph.

50.    American Fire is liable under IFCA for, among other things: failing to conduct a reasonable investigation into OE's claim under the Policy; compelling OE to initiate litigation to recover amounts due to it under the Policies; failing to reasonably connect the Policy's language, on which the denial relies, to controlling law and the facts of OE's claim; and unreasonably denying OE's claim and all policy benefits. In addition, American Fire is liable under IFCA for violating multiple provisions of the Washington Administrative Code Section 284-30-330, including, at minimum:

    a.    WAC 284-30-330(3) (making it an unfair claims handling practice to "fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.");

    b.    WAC 284-30-330(4) (making it an unfair claims handling practice to "refuse to pay claims without conducting a reasonable investigation.");

    c.    WAC 284-30-330(7) (making it an unfair claims handling practice to "compel a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.");

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 15
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

  d.  WAC 284-30-330(13) (making it an unfair claims handling practice to "fail to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."); and

  e.  WAC 284-30-330 (18) making it an unfair claims handling practice to "fail to make a good faith effort to settle a claim before exercising a contract right to appraisal.").

51. American Fire's acts and omissions in violation of IFCA have proximately and directly caused and continue to cause OE to suffer damages in an amount to be proven at trial.

52. In addition to its actual damages, OE is entitled to recover its attorney fees, litigation costs, and expert witness fees pursuant to RCW 48.30.015(3).

53. Finally, this Court may award up to three times OE's actual damages pursuant to RCW 48.30.015(3).

## V. REQUEST FOR RELIEF

WHEREFORE, Orthodontic Excellence prays for relief as follows:

1. For damages in an amount to be proven at trial;

2. For declaratory relief as described above;

3. For prejudgment interest accruing until the date a judgment is entered, plus post-judgment interest at the statutory rate;

4. For treble damages under the Consumer Protection Act and under the Insurance Fair Conduct Act;

5. For coverage by estoppel;

6. For costs and disbursements, including reasonable attorney fees; and

7. For such further relief as the Court deems just and equitable.

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 16
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

DATED this 10th day of January 2023.

*s/ Tristan Swanson*
Tristan Swanson, WSBA No. 41934
*s/ Donald B. Scaramastra*
Donald B. Scaramastra, WSBA No. 21416
*s/ Carolyn Mount*
Carolyn Mount, WSBA No. 55527
Miller Nash LLP
Pier 70, 2801 Alaskan Way
Suite 300
Seattle, WA 98121
Telephone: (206) 624-8300
Fax: (206) 340-0599
Email: Tristan.swanson@millernash.com
Email: Carolyn.mount@millernash.com
Email: Don.scaramastra@millernash.com

Attorneys for Orthodontic Excellence

AMENDED AND SUPPLEMENTAL ANSWER AND
COUNTERCLAIMS - 17
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9

## CERTIFICATE OF SERVICE

I hereby certify that on January 10th, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 10th day of January 2023.

*s/ Cara Lowrance*
Cara Lowrance, Legal Assistant

CERTIFICATE OF SERVICE
Case No. 3-21-cv-05601-RSL

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599
4834-1989-1964.9